IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNYLSVNIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 11-26184-CMB |
| | ) | |
| ERIK W. OLSON, | ) | Chapter: 7 |
| | ) | |
| Debtor, | ) | Adversary No. 12-02008-CMB |
| _____ | ) | |
| | ) | |
| FFI GROUP, LLC, JOHN OLSON | ) | |
| and THOMAS OLSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIK W. OLSON, | ) | |
| | ) | |
| Defendant. | ) | |

*Appearances:* Mark B. Peduto, Esq., for Plaintiffs, FFI Group LLC,
John Olson and Thomas Olson
Robert R. Druzisky, Esq. for Debtor-Defendant, Erik W. Olson

**MEMORANDUM OPINION**

The matter before the Court is Plaintiffs' *Complaint Objecting to Discharge of Debtor* ("Complaint"). Plaintiffs, FFI Group, LLC ("FFI"), John Olson, and Thomas Olson, commenced the above-captioned adversary proceeding seeking denial of Debtor's discharge pursuant to 11 U.S.C. §727(a)(2), (4), and/or (5), or, in the alternative, a determination of non-dischargeability

as to the debt owed to Plaintiffs under 11 U.S.C. §523(a)(6).[1] For the reasons stated herein, this Court finds that the Debtor is entitled to a discharge and further, that any debt owed to Plaintiffs by Debtor is dischargeable.

## FINDINGS OF FACT

In March 2006, Plaintiffs, John Olson and Tom Olson, formed FFI, with Debtor, Erik W. Olson, along with Ryan McConnell and Brian Kamauf for the purposes of purchasing and rehabilitating properties for sale and/or rent, along with development of inventions. Following an initial purchase, rehabilitation, and sale of a property, with said sale occurring in January 2007, between January and August of 2007, FFI purchased an additional five properties; one of which has been subject to property dispute and thus disregarded by FFI. Of the four remaining properties 401/403 Pacific Avenue, a duplex, and 473 New 8th Avenue were determined to be rental properties, whereas FFI intended to rehabilitate and sell 148 West View Avenue ("West View") and 1410 Davis Avenue ("Davis").

In order to finance the purchase of the five properties, FFI secured several different loans from Investor's Deal, Huntington National Bank, and National City Bank. Testimony at trial indicated that the total loan proceeds received was between approximately $252,000.00 and $276,000.00. Although FFI's business account was in multiple members' names, from the outset of FFI, possession of FFI's checkbook was given to Debtor.

In addition to FFI, Debtor also owned EWO Development ("EWO"), a construction company organized as an S Corporation. FFI employed EWO to complete work on the properties but agreed that subcontractors could be used if necessary. Repairs were made to the two rental properties and the premises were rented out. However, issues, including non-payment of rent, arose with the tenants thereafter and by mid-2008, the rental properties were vacant.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(I) and (J), and the Court will enter final judgment in this proceeding. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall,* 131 S.Ct. 2594 (2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

As for the rehabilitation properties, the parties planned to complete the work on Davis and place it on the market prior to beginning work on West View. However, due to complications stemming from the township in which West View was situated, FFI was forced to work on the properties concurrently.

At a meeting occurring in January 2008, both Davis and West View were given an estimated completion timeframe of April or May 2008. As these deadlines approached, however, completion was progressively pushed back month by month; at an August 2008 meeting completion was estimated for September 2008. In the interim, Debtor expressed his need for help with FFI's finances at several FFI meetings, however no assistance was given.

In August 2008, FFI began receiving late notices and other indications of past due accounts. John Olson and Tom Olson requested that Debtor turn over the business checkbook and Debtor complied. Upon review of the business accounts, Tom Olson found that most of the loan proceeds had been spent. Further, Tom Olson testified that the business ledger was incomplete.

In order to complete the work on the properties and continue the operation of FFI, Tom Olson and John Olson infused FFI with additional personal loans, as well as loans from family members, of approximately $75,000.00 to $105,000.00. Ultimately, FFI sold Davis in June 2009 and West View in January 2011. Subsequently, FFI filed a Chapter 7 Petition on July 29, 2011. Debtor filed his Chapter 7 Petition on October 5, 2011. Plaintiffs commenced the action by filing their Complaint in 2012.

**APPLICABLE STANDARDS & DISCUSSION**

<u>Denial of Discharge under 11 U.S.C. §727</u>

"Congress described §727's discharge provisions as 'the heart of the fresh start provisions of the bankruptcy law." *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir. 1993)(citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977)). "Completely denying a debtor his discharge, as opposed to avoiding a transfer or declining an individual debt pursuant to §523, is an extreme step and should not be taken lightly." *Rosen*, 996 F.2d at 1531. As such, in

3

evaluating a claim made pursuant to this section, §727 is to be "construed liberally in favor of the debtor." *Id.* Plaintiff, as the objecting creditor, bears the burden of proving grounds for denial pursuant to §727 by preponderance of the evidence. *In re Burrik*, 459 B.R. 881, 888 (Bankr.W.D.Pa.2011)(citing 6 *Collier on Bankruptcy,* ¶ 727.01[2] at 727–8 (Bender 2010)). *See also Serio v. DiLoreto* (*In re DiLoreto*), 266 Fed.Appx. 140, 144-145 (3d Cir. 2008); *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

a. 11 U.S.C. §727(a)(2)

Pursuant to 11 U.S.C. §727(a)(2), the Court shall enter a discharge unless, "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed" either " (A) **property of the debtor**, within one year before the date of the filing of the petition; or . . .(B) **property of the estate**, after the date of the filing of the petition[.]" (Emphasis added).

"The required intent must be actual; constructive fraud will not suffice." *Heinecke v. Ryan (In re Ryan),* 285 B.R. 624, 630 (Bankr.W.D.Pa.2002)(citation omitted). However, "[b]ecause actual intent is difficult to prove by direct means, it may be inferred from circumstantial evidence." *In re Ryan,* 285 B.R. at 630 (citation omitted). "A debtor may be denied a discharge pursuant to § 727(a)(2)(A) even though no creditor was harmed by the transfer or concealment. Proof of harm, in other words, is not a requirement of § 727(a)(2)(A)." *In re Ryan,* 285 B.R. at 630 (citation omitted).

At the outset of this analysis, the Court notes that the basis for Plaintiffs' arguments for denial of discharge under §727(a)(2) is not entirely clear in the Complaint. Under Count II, which addresses Plaintiffs' request for denial of discharge under §727(a)(2), the Plaintiffs cite to

4

no alleged facts but generally aver that "[w]ithin one year before the Petition Date, the Debtor transferred, removed, destroyed, mutilated or concealed or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the Debtor as set forth above." *See* Complaint, ¶ 27. However, a reading of the facts alleged in the Complaint suggests that the Plaintiffs seek relief under §727(a)(2) due to Debtor's failure to produce bank statements belonging to Plaintiff, FFI Group, LLC. *See* Complaint, ¶ 12. This reading is supported by both the *Amended Pretrial Statement of Plaintiffs, FFI Group, LLC., John Olson and Thomas Olson* ("Pretrial"), wherein Plaintiffs aver that "[b]oth prior to and during the Bankruptcy proceeding of FFI, Debtor/Defendant has been asked to produce bank statements, receipts, accountings, . . .", as well as Tom Olson's and Debtor's testimony at trial that the records of FFI's business checkbook, when turned over by Debtor to Plaintiffs, were incomplete. *See* Pretrial, ¶3(B). Thus, Plaintiffs seek to deny Debtor's discharge due to Debtor's alleged concealment of FFI's property. Consequently, the issue of whether Debtor can be denied a discharge under §727(a)(2) for Debtor's alleged concealment of assets of Plaintiff, a limited liability company of which Debtor was a member, arises.

A similar issue under this section arose in *GMAC Inc. v. Coley* (*In re Coley*), 433 B.R. 476 (Bankr.E.D.Pa. 2010). In *In re Coley*, the debtor was the owner, president and principal of Exton Motors, Inc., of which he also controlled operations. *In re Coley,* 433 B.R. at 483. GMAC Inc. brought an adversary complaint against the debtor seeking to deny discharge under §727(a)(2) for debtor's alleged transfer or concealment of vehicle inventory owned by Exton Motors, Inc.

In weighing the claims, the *Coley* court held that, construed narrowly, §727 does not support the denial of an individual debtor's discharge based on a transfer or concealment of property if the debtor lacks an ownership interest in said property, ". . . at least in the absence of grounds to

5

treat the entity as the debtor's alter ego." *In re Coley,* 433 B.R. at 488-489 (citing *Wachovia Bank v. Spitko (In re Spitko)*, 357 B.R. 272, 299 (Bankr.E.D.Pa.2006)).

The *Coley* Court observed:

> According to the plain language of the statute, there must be a disposition of "property of the debtor." Relying on this language, courts have recognized that section 727(a)(2)(A) is concerned with the disposition of property in which the debtor has a "direct proprietary interest."
>
> When a corporation is a bona fide entity distinct from an individual debtor-shareholder, courts have applied the above-stated principle to hold that transfers of property belonging to the corporation are outside the scope of section 727(a)(2)(A)….

*Id.* at 489 (citing *In re Spitko, supra.* at 299).

This Court has previously found the *Coley* analysis persuasive, applying it in *Enterprise Bank v. Hannan (In re Hannan )*, 477 B.R. 603, 608 (Bankr.W.D.Pa.2012) to deny the plaintiff's §727(a)(2) claim where the debtor, as president and majority owner of a corporation, lacked ownership interest in the transferred corporate property, and will similarly apply it herein. Accordingly, as the property identified by Plaintiffs as being concealed by the Debtor is property of FFI and not of Debtor, and as Plaintiffs have failed to even allege that FFI should be treated as Debtor's alter ego, the Court finds that the Plaintiffs have failed to show that there has been a disposition of Debtor's property upon which to base a §727(a)(2) claim. [2] Therefore, Debtor will not be denied a discharge under 11 U.S.C. §727(a)(2).

---

[2] In their post-trial brief, Plaintiffs aver that although the property in question was property of FFI, that "the statute" applies as Debtor was a voting member of FFI and had control over the company checkbook. In making this argument, Plaintiffs fail to identify to which statute they refer, however based on Plaintiffs' citation to *In re Coley*, *supra* at 487-489, the Court infers that Plaintiffs refer to §727(a)(2) and the "alter ego" exception discussed therein. On review, the Court notes that not only is the Plaintiffs' post-trial argument insufficient to constitute a claim for "alter ego" status, having only merely alluded thereto, but even if such claim were sufficiently averred, the Court would not evaluate its merits as the Plaintiffs failed to properly raise an allegation of "alter ego" at trial and/or in prior pleadings.

b. 11 U.S.C. §727(a)(4)

In accordance with 11 U.S.C. §727(a)(4), this Court shall grant debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case -- (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]"

> As is expressly stated in § 727(a)(4)(A), a false oath is not actionable thereunder unless it was "knowingly and fraudulently made." 6 *Collier on Bankruptcy,* ¶ 727.04[1][a] at 727−36; *see also Bernard,* 99 B.R. at 570 (same). "Additionally, [in order for] the false oath made by the debtor [to be so actionable, it] must have related to a material matter." Bernard [sic], 99 B.R. at 570; *see also* 6 *Collier on Bankruptcy,* ¶ 727.04[1][b] at 727−37 [ ](same). Finally, and as a corollary of the preceding points,
>
>> [a] debtor's omission of items without intent to conceal them from creditors, due either to inadvertence or because the property is not the type that comes to mind when listing one's disposable property, would not constitute a knowingly false statement under oath made by a debtor with intent to defraud creditors. *Bernard,* 99 B.R. at 570.

*Ivory v. Barbe (In re Barbe)*, 466 B.R. 737, 745-46 (Bankr.W.D.Pa. 2012).

As with their basis for relief under §727(a)(2), in their Complaint, Plaintiffs fail to specify the grounds upon which they assert a denial of discharge pursuant to §727(a)(4). Instead, Plaintiffs allude to their prior averment that the Debtor, in contradiction to his §341 Meeting of Creditors testimony, made withdrawals from, and accessed funds of, FFI. *See* Complaint, ¶13. At trial, counsel for Plaintiffs expounded upon this averment by questioning Debtor's testimony at his §341 Meeting of Creditors that he gained no financial benefit from FFI despite it appearing

7

as though over $200,000.00 was paid to Debtor and/or his business, EWO. Additionally, Plaintiffs challenged Debtor's valuation of his interest in FFI, reported as worthless on his bankruptcy schedules, where sufficient assets exist to make distributions in FFI's bankruptcy case. In response, Debtor testified that although he received money from FFI, he actually lost money overall causing him to believe that his interest in FFI was valueless. Moreover, Debtor testified that he was unaware that FFI has assets. The Court finds Debtor's testimony credible and further, finds that such testimony demonstrates that even if Debtor's prior statements were determined to be false oaths, that they were not knowingly and fraudulently made. Consequently, the Plaintiffs cannot show that the Debtor, if found to have made a false oath, possessed the requisite intent to deny Debtor's discharge under 11 U.S.C. §727(a)(4).

   c. <u>11 U.S.C. §727(a)(5)</u>

Finally, with respect to Plaintiffs' claims made under §727(a)(5), the Court shall enter discharge unless "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"

In addressing matters brought pursuant to §727(a)(5), this Court has previously held:

> In order to prevail, "[t]he objecting party must first make a showing that the debtor 'at one time owned substantial and identifiable assets that are no longer available to his creditors.' " *GMAC Inc. v. Coley (In re Coley),* 433 B.R. 476, 489 (Bankr.E.D.Pa.2010) (quoting *In re Wasserman,* 332 B.R. 325, 333 (Bankr.N.D.Ill.2005)). Applying a burden shifting approach, the debtor then must provide a satisfactory explanation in response. *Coley,* 433 B.R. at 489. For purposes of this provision, the propriety of the disposition of the assets is not the court's concern. *Id.* Rather, the court, in its discretion, must determine whether the explanation provided by the debtor is satisfactory. *Id.* An explanation is satisfactory if it (1) consists of more than a vague, uncorroborated statement, (2)

8

is deemed worthy of belief by the court, and (3) leaves no question as to what happened to the unavailable assets. *Id.*

*Haupt v. Belonzi (In re Belonzi)*, 476 B.R. 899, 907 (Bankr. W.D. Pa. 2012).

Again, Plaintiffs, under Count IV of their Complaint, generally aver that "Debtor has failed to explain satisfactorily any loss of asset[sic] or deficiency of assets to meet the debtor's liabilities." *See* Complaint, ¶33. In making this assertion, Plaintiffs fail to specifically identify the grounds on which they stake their §727(a)(5) claim, but refer to prior averments wherein the Plaintiffs allege that the Debtor has "failed or refused to provide . . . explanations for his actions." *See* Complaint, ¶ 12. At trial, Plaintiffs, through the testimony of Tom Olson, argued that Debtor has failed to satisfactorily explain the loss of over $100,000 in funds from FFI.

As with Plaintiffs' claim under §727(a)(2), the property subject of Plaintiffs' argument, specifically over $100,000.00 in cash or cash equivalent, is property of FFI and not Debtor. Where the loss of assets does not relate to assets of the Debtor, the application of §727(a)(5) is questionable at best. *In re Hannan*, 477 B.R. at 609. As this Court has previously observed in *In re Belonzi, supra.*, at least one court has held that "as opposed to the analysis under § 727(a)(3) which may in some cases involve the evaluation of the records of distinct business entities, the analysis under '(a)(5) focus[es] only on property of the debtor or property which would have been property of the debtor's estate[.]'" *In re Belonzi*, 476 B.R. at 907 (citing *First Nat'l Bank v. Orr (In re Orr),* Adv. No. 11–1502 ABC, 2011 WL 5854712, at *4–5, 2011 Bankr.LEXIS 4618, at *12–13 (Bankr.D.Colo. Nov. 22, 2011)). This Court finds *In re Orr* persuasive on this issue. Accordingly, as the allegedly missing funds of FFI were not property of the Debtor, and, as such, would not have been available to Debtor's creditors, the Plaintiff has failed to show by a preponderance of the evidence that the Debtor should be denied a discharge under 11 U.S.C. §727(a)(5).

9

Determination of Dischargeability Under 11 U.S.C. §523(a)(6)

The underlying intent of the Bankruptcy Code is to afford honest but unfortunate debtors "relief 'from the weight of oppressive indebtedness and provide them with a fresh start.'" *Gaussa v. Crawford (In re Crawford),* 476 B.R. 890, 894 (Bankr.W.D.Pa.2012)(*quoting Insurance Co. of N. Am. v. Cohn (In re Cohn),* 54 F.3d 1108, 1113 (3d Cir.1995)). As such, exceptions to discharge are strictly construed against the creditor and liberally in favor of the debtor. *Id.* However, discharge is not guaranteed as the "honest but unfortunate" requirement seeks to ensure that a "deceitful debtor does not benefit from his or her own fraud." *In re Crawford,* 476 B.R. at 894 (*quoting Corso v. Walker (In re Walker)*, 439 B.R. 854, 859 (Bankr.W.D.Pa.2010)(citations omitted)). In actions brought under §523, the creditor bears the burden of proof by the preponderance of the evidence. *In re Crawford,* 476 B.R. at 895 (*citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

Pursuant to 11 U.S.C. §523(a)(6), an individual debtor may be denied discharge from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. In evaluating claims made under this section, this Court has previously held that:

> As to the willfulness component, § 523(a)(6) requires more than simply a deliberate or intentional act causing injury. *See Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The actor must have either "purposefully inflicted the injury or acted with substantial certainty that injury would result." *Conte v. Gautam (In re Conte),* 33 F.3d 303, 305 (3d Cir.1994). As to the malice requirement, the act resulting in the injury must be "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *See Wymard v. Ali (In re Ali),* 321 B.R. 685, 693 (Bankr.W.D.Pa.2005) (citing 4 Collier on Bankruptcy ¶ 523.12[1] at 523–91).

*In re Hannan*, 477 B.R. at 612.

Negligently or recklessly inflicted injuries are insufficient to sustain a claim under §523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. at 64. *See also Lyon Financial Services, d/b/a U.S. Bancorp Manifest Funding Services v. Dutt (In re Dutt)*, BR 09-29477-CMB, 2013 WL 425956, at *1 (Bankr.W.D.Pa. Feb. 1, 2013).

In the within matter, Plaintiffs allege in their Complaint that the Debtor "caused willful and malicious injury to another entity and to the property of another entity." Specifically, Plaintiffs aver that the Debtor committed willful and malicious injury by failing to rehabilitate properties purchased by FFI in a timely manner, overdrawing FFI's bank accounts, and/or misusing FFI's funds. After review of the within matter, the Court finds that Plaintiffs failed to show by a preponderance of the evidence that the Debtor committed a willful and malicious injury pursuant to §523(a)(6).

Starting with the last listed allegation, Plaintiffs failed to present any credible evidence that the Debtor misappropriated funds from FFI. At trial Plaintiffs submitted Exhibit 4, wherein Plaintiffs aver that Debtor caused in excess of $152,000.00 and $60,000.00 to be paid to EWO and Debtor, respectively. Plaintiffs contend that such payments were unauthorized and/or misappropriated; however, Plaintiffs failed to identify a single payment to EWO which Plaintiffs could prove was not validly earned as an approved contractor of FFI. With respect to the payments to Debtor, Debtor credibly testified at trial that he would frequently make payments on behalf of FFI personally and/or advance FFI money to meet certain deadlines and would later reimburse himself for said expenses/loans. Plaintiffs failed to present any credible evidence to dispute this testimony. Likewise, Plaintiffs failed to show that any other payment or withdrawal of funds was for anything other than a valid business expense or otherwise approved by FFI.

As with Plaintiffs' allegations of misappropriation, Plaintiffs also failed to provide any credible evidence that the Debtor caused a willful and malicious injury by causing overdraft fees and failing to rehabilitate properties timely. Notably, the Plaintiffs failed to show that any overdraft fees were incurred by FFI during the time period in which Debtor had access to FFI's account. All bank statements provided to the Court at trial were for the time periods from August 25, 2010 forward. Instead, Plaintiffs provided a summary chart, Exhibit 4, with all alleged late fees and overdrafts cause by Debtor. The Court notes that even if it were to take this chart as true and accurate, that the mere incurrence of late fees and overdraft fees would not be sufficient to establish the requisite intent for relief under §523(a)(6). Considering Debtor's testimony, corroborated by witness Ryan McConnell, that he had on more than one occasion prior to Plaintiffs taking FFI's checkbook from Debtor in August 2008, asked to be relieved of the financial responsibilities of FFI due to Debtor being overwhelmed, Plaintiffs have failed to show that any late fees and/or overdraft charges were due to anything other than negligence at most.

With respect to failing to complete rehabilitation projects timely, Plaintiffs failed to provide any evidence that Debtor did anything other than exceed original time projections for completion of projects and further, that such an extension of time was not warranted. At trial, Debtor testified that more work was necessary than originally contemplated to successfully rehabilitate the properties. This testimony was supported by Ryan McConnell's statement at trial that a substantial amount of work was done on the properties from beginning to end. Plaintiffs failed to submit any evidence showing that work on the properties was unjustifiably delayed and further, that if such work was unjustifiably delayed, that Debtor was the cause. Thus, Plaintiffs have failed to show that relief is appropriate under §523(a)(6).

## CONCLUSION

For the foregoing reasons, Plaintiffs' *Complaint Objecting to Discharge of Debtor* is denied as the Plaintiffs failed to demonstrate by a preponderance of the evidence that the Debtor should be denied a discharge pursuant to 11 U.S.C. §727(a)(2),(4), and/or (5), and/or that the debt owed to Plaintiff should be found nondischargeable under §523(a)(6).  Accordingly, any debt owed by Debtor to Plaintiffs is dischargeable.  An appropriate Order will be entered consistent with this Memorandum Opinion.

Dated: February 3, 2014                                  /s/ Carlota M. Böhm
                                                         Carlota M. Böhm
                                                         United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**
Mark B. Peduto, Esq.
Robert R. Druzisky, Esq.
Scott R. Lowdon, Esq.
Erik W. Olson